IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

GENI A. B.,[1] )
)
       Plaintiff, )
)
vs. ) Civil No. 18-cv-088-CJP[2]
)
COMMISSIONER OF SOCIAL )
SECURITY, )
)
       Defendant. )

## **MEMORANDUM and ORDER**

**PROUD, Magistrate Judge:**

In accordance with 42 U.S.C. § 405(g), plaintiff seeks judicial review of the final agency decision denying her application for Disabled Child's Insurance Benefits and Supplemental Security Income (SSI) benefits pursuant to 42 U.S.C. § 423.

## **Procedural History**

Plaintiff applied for benefits in July 2013, initially alleging she became disabled as of October 11, 1980, her date of birth. She later amended the alleged onset date of July 22, 2013, the date of the application. After holding an evidentiary hearing, ALJ P. H. Jung denied the application on February 8, 2017. (Tr. 16-26). The Appeals Council denied review, and the decision of the ALJ

---

[1] In keeping with the court's recently adopted practice, plaintiff's full name will not be used in this Memorandum and Order due to privacy concerns. See, Fed. R. Civ. P. 5.2(c) and the Advisory Committee Notes thereto.

[2] This case was assigned to the undersigned for final disposition upon consent of the parties pursuant to 28 U.S.C. §636(c). See, Doc. 17.

became the final agency decision. (Tr. 1). Administrative remedies have been exhausted and a timely complaint was filed in this Court.

## Issue Raised by Plaintiff

Plaintiff raises the following issues:

1. The ALJ erred in evaluating plaintiff's daily activities.

2. The ALJ erred in failing to identify and reconcile apparent conflicts between the VE's testimony and the *Dictionary of Occupational Titles* (DOT).

## Applicable Legal Standards

To qualify for Disabled Child's Insurance Benefits or SSI, a claimant must be disabled within the meaning of the applicable statutes.[3] For these purposes, "disabled" means the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

A "physical or mental impairment" is an impairment resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. § 423(d)(3). "Substantial gainful activity" is work activity that involves doing significant physical or mental activities, and that is done for pay or profit. 20

---
[3] The statutes and regulations pertaining to Disability Insurance Benefits (DIB) are found at 42 U.S.C. § 423, et seq., and 20 C.F.R. pt. 404. The statutes and regulations pertaining to SSI are found at 42 U.S.C. §§ 1382 and 1382c, et seq., and 20 C.F.R. pt. 416. The standard for disability under both sets of statutes are identical, and the same standard applies to Disabled Child's Insurance Benefits. Furthermore, 20 C.F.R. § 416.925 detailing medical considerations relevant to an SSI claim, relies on 20 C.F.R. Pt. 404, Subpt. P, the DIB regulations. Most citations herein are to the DIB regulations out of convenience.

C.F.R. § 404.1572.

For Disabled Child's Insurance Benefits, the claimant must be over the age of 18, and the disability must have predated her 22nd birthday. 20 C.F.R. § 404.350(a). Here, the amended alleged onset date postdates plaintiff's 22nd birthday. See, Tr. 18.

Social Security regulations set forth a sequential five-step inquiry to determine whether a claimant is disabled. The Seventh Circuit Court of Appeals has explained this process as follows:

> The first step considers whether the applicant is engaging in substantial gainful activity. The second step evaluates whether an alleged physical or mental impairment is severe, medically determinable, and meets a durational requirement. The third step compares the impairment to a list of impairments that are considered conclusively disabling. If the impairment meets or equals one of the listed impairments, then the applicant is considered disabled; if the impairment does not meet or equal a listed impairment, then the evaluation continues. The fourth step assesses an applicant's residual functional capacity (RFC) and ability to engage in past relevant work. If an applicant can engage in past relevant work, he is not disabled. The fifth step assesses the applicant's RFC, as well as his age, education, and work experience to determine whether the applicant can engage in other work. If the applicant can engage in other work, he is not disabled.

*Weatherbee v. Astrue*, 649 F.3d 565, 568-569 (7th Cir. 2011).

Stated another way, it must be determined: (1) whether the claimant is presently unemployed; (2) whether the claimant has an impairment or combination of impairments that is serious; (3) whether the impairments meet or equal one of the listed impairments acknowledged to be conclusively disabling; (4) whether the claimant can perform past relevant work; and (5) whether the claimant is capable of performing any work within the economy, given his or her age, education and work

experience. 20 C.F.R. § 404.1520; *Simila v. Astrue*, 573 F.3d 503, 512-513 (7th Cir. 2009).

If the answer at steps one and two is "yes," the claimant will automatically be found disabled if he or she suffers from a listed impairment, determined at step three. If the claimant does not have a listed impairment at step three and cannot perform his or her past work (step four), the burden shifts to the Commissioner at step five to show that the claimant can perform some other job. *Rhoderick v. Heckler*, 737 F.2d 714, 715 (7th Cir. 1984). *See also Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001) (Under the five-step evaluation, an "affirmative answer leads either to the next step, or, on Steps 3 and 5, to a finding that the claimant is disabled.... If a claimant reaches step 5, the burden shifts to the ALJ to establish that the claimant is capable of performing work in the national economy.").

This Court reviews the Commissioner's decision to ensure that the decision is supported by substantial evidence and that no mistakes of law were made. It is important to recognize that the scope of review is limited. "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive. . . ." 42 U.S.C. § 405(g). Thus, this Court must determine not whether plaintiff was, in fact, disabled at the relevant time, but whether the ALJ's findings were supported by substantial evidence and whether any errors of law were made. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). This Court uses the Supreme Court's definition of substantial evidence, i.e., "such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

In reviewing for "substantial evidence," the entire administrative record is taken into consideration, but this Court does <u>not</u> reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its own judgment for that of the ALJ. *Murphy v. Colvin,* 759 F.3d 811, 815 (7th Cir. 2014). However, while judicial review is deferential, it is not abject; this Court does not act as a rubber stamp for the Commissioner. See, *Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010), and cases cited therein.

### **The Decision of the ALJ**

ALJ Jung followed the five-step analytical framework described above. He determined that plaintiff had not been engaged in substantial gainful activity since the alleged onset date and that she had severe impairments of history of seizure disorder, hip disorder/developmental dysplasia, sleep apnea, asthma, and borderline intellectual functioning, which did not meet or equal a listed impairment.

The ALJ found that plaintiff had the residual functional capacity (RFC) to perform a limited range of light work. Her limitations included mental limitations such as only routine tasks, "no production rate or pace or quota types of jobs," few or infrequent changes in routine, and only occasional interaction with supervisors, coworkers, and the public

The ALJ found that plaintiff could not do her past relevant work as a hotel housekeeper. Based on the testimony of a vocational expert, the ALJ found that

plaintiff was not disabled because she was able to do other jobs that exist in significant numbers in the national economy.

**<u>The Evidentiary Record</u>**

The Court has reviewed and considered the entire evidentiary record in formulating this Memorandum and Order. In view of plaintiff's argument, the Court will omit a discussion of the medical evidence.

In a Function Report submitted in April 2014, plaintiff said she was born with "mild retardation and cannot comprehend complex conversations or problems." She said she did laundry and picked up her bedroom. Cleaning her room took 4 hours and laundry took a week. Her cooking was limited to sandwiches, noodles, cereal and heating leftovers in the microwave. Her family usually did the cooking. She did not know how to drive. She went to the grocery store with her sister. She was not able to count change or use a checkbook. Her family reminded her to bathe. She could not follow written or spoken instructions very well. She did puzzles a couple of times a month but needed help to complete them. She watched TV shows and read books, but they had "different endings each time." (Tr. 362-369). In an earlier Function Report, plaintiff said that she went shopping with her sister, but she usually waited in the car. Her family told her that she reads the same books and "get different results." (Tr. 333).

Plaintiff was represented by an attorney at the evidentiary hearing in January 2017. (Tr. 35).

Plaintiff testified that she graduated from high school, but she was in special education classes. She could not concentrate and "kept failing at everything."

She could not understand a lot of what she read and was "really bad at math." She was not good at counting money. (Tr. 42). She had worked as a housekeeper at a hotel but was fired because her work was "not good enough." (Tr. 44-45).

Plaintiff lived with her sister and brother-in-law and their children. She moved in with her sister after their mother died. Her brother-in-law helped her if she did not understand papers that she received in the mail. She had been told not to do certain things around the house because she broke some of her sister's things. She was not allowed to do laundry because she did something wrong to the machine. She had never lived on her own and did not think she could because she was not smart enough and she could "barely take care of myself." (Tr. 48-52).

A vocational expert (VE) also testified. At the outset of her testimony, the ALJ asked her to alert him to any conflicts between her testimony and information contained in the DOT. (Tr. 53).

The ALJ asked a hypothetical question which corresponded to the RFC assessment. The VE identified three jobs that could be done by a person with plaintiff's RFC: garment bagger (DOT 920.687-018), hand bander (DOT 920.687-026), and bench assembler (DOT 706.684-042). (Tr. 54-55).

Plaintiff's counsel asked no questions of the VE regarding conflicts with the DOT and did not object to her testimony. (Tr. 56).

## Analysis

Plaintiff's second argument is not well-taken. She argues that the VE's testimony conflicted with information in the DOT because the hypothetical question included mental limitations that are not addressed by the DOT.

7

As was noted above, at step five of the sequential analysis, if the claimant is not able to perform her past work, the Commissioner bears the burden of showing that she can perform other jobs that exist in significant numbers in the economy.

In making the step five determination, the ALJ generally relies on the DOT for information about the typical characteristics of jobs as they exist in the economy.[4] An ALJ is required to take administrative notice of job information contained in various publications, including the DOT, published by the Department of Labor. See, 20 C.F.R. § 404.1566(d)(1). The ALJ often also relies on testimony from a VE to "supplement the information provided in the DOT by providing an impartial assessment of the types of occupations in which claimants can work and the availability of positions in such occupations." *Weatherbee v. Astrue,* 649 F.3d 565, 569 (7th Cir. 2011).

For each job title, the DOT specifies whether certain physical and mental activities are required, and, if so, the frequency with which they are required. The DOT does not, of course, speak to every possible aspect of the job title.

When a VE testifies, the ALJ is required to ask the VE whether there are any conflicts between her testimony and the information in the DOT; if so, the ALJ must resolve those conflicts. *Overman v. Astrue*, 546 F.3d 456, 463 (7th Cir. 2008). The ALJ did ask the VE about conflicts here, and no conflicts were identified by the VE.

---

[4]The agency is developing a replacement for the DOT, referred to as the "Occupational Information System." This system will be the "primary source of occupational information SSA staff use in our disability adjudication process." This system is projected to be implemented in 2020. https://www.ssa.gov/disabilityresearch/occupational_info_systems.html, visited on November 19, 2018.

Plaintiff's counsel did not point out any conflict between the VE's testimony and the DOT at the evidentiary hearing.[5] Therefore, in this Court, plaintiff "now has to argue that the conflicts were obvious enough that the ALJ should have picked up on them without any assistance, for SSR 00–4p requires only that the ALJ investigate and resolve *apparent* conflicts between the VE's evidence and the DOT." *Overman v. Astrue*, 546 F.3d 456, 463 (7th Cir. 2008), citing *Prochaska v. Barnhart*, 454 F.3d 731, 735 (7th Cir. 2006)[emphasis in original].

Defendant argues that there is no conflict here at all because the VE testified about subjects not addressed in the DOT. She cites *Zblewski v. Astrue*, 302 F. App'x 488, 494 (7th Cir. 2008). Doc. 22, p. 8. Further, since the filing of the briefs in this case, the Seventh Circuit issued its decision in *Collins v. Berryhill*, ___ F. App'x ___, 2018 WL 3783601 (7th Cir. Aug. 9, 2018), reh'g denied (Sept. 24, 2018), also agreeing with defendant's argument. The Seventh Circuit found that there was a conflict where the VE testified about a topic addressed in the DOT (exertional level), but there was not a conflict where the DOT was silent (sit/stand option). "Because the DOT does not specify whether jobs allow changing from sitting to standing, the VE's testimony supplemented the DOT and did not conflict with it." *Collins*, 2018 WL 3783601, at *4. Although *Collins* and *Zblewski* are nonprecedential, this Court finds the reasoning of those cases to be persuasive.

Plaintiff's first argument about the ALJ's consideration of her daily activities fares better.

The ALJ stated that, in a Function Report, plaintiff "states she reads, watches

---

[5] Plaintiff is represented by a different attorney in this Court.

television, does puzzles, prepares simple meals, does laundry, goes shopping in stores, and cleans her room, suggesting sufficient functioning for work within the residual functional capacity assessment." (Tr. 23).

The ALJ was referring to Exhibit B12E for this information. See, Tr. 20. That exhibit is the April 2014 Function Report discussed above. The information contained in that Report was not accurately described by the ALJ. For instance, plaintiff said that she did puzzles a couple of times a month but needed help to complete them. She watched TV shows and read books, but they had "different endings each time." She said it took her a week to do laundry, and that her cooking was limited to sandwiches, noodles, cereal and heating leftovers in the microwave.

The ALJ also found it suspicious that the Function Report said plaintiff did laundry, but she testified at the hearing that she did not. (Tr. 21). The ALJ failed to acknowledge that the Report was submitted almost 3 years before the hearing, and plaintiff explained at the hearing that she had been told not to do laundry because she did something wrong to the machine.

"We have repeatedly cautioned that a person's ability to perform daily activities, especially if that can be done only with significant limitations, does not necessarily translate into an ability to work full-time." *Roddy v. Astrue*, 705 F.3d 631, 639 (7th Cir. 2013). The Seventh Circuit has called improper consideration of daily activities "a problem we have long bemoaned, in which administrative law judges have equated the ability to engage in some activities with an ability to work full-time, without a recognition that full-time work does not allow for the flexibility

to work around periods of incapacitation." *Moore v. Colvin*, 743 F. 3d 1118, 1126 (7th Cir. 2014). The ALJ here overstated plaintiff's ability to do things and overstated the significance of her activities; the ability to make a sandwich and do a puzzle once a month with help is not indicative of an ability to sustain full-time work. See, *Alaura v. Colvin*, 797 F.3d 503, 506 (7th Cir. 2015), criticizing the ALJ for relying on plaintiff's ability to feed his cats and make sandwiches. Further, plaintiff's limited ability to read or watch television says very little about her ability to function at work. See, *Powers v. Apfel*, 207 F.3d 431, 435 (7th Cir. 2000), expressing skepticism "that the ability to watch television for several hours indicates a long attention span."

The erroneous credibility determination requires remand. "An erroneous credibility finding requires remand unless the claimant's testimony is incredible on its face or the ALJ explains that the decision did not depend on the credibility finding." *Pierce v. Colvin*, 739 F.3d 1046, 1051 (7th Cir. 2014). Reconsideration of plaintiff's credibility will also require a "fresh look" at plaintiff's RFC. *Ibid.*

The Court wishes to stress that this Memorandum and Order should not be construed as an indication that the Court believes that plaintiff is disabled or that she should be awarded benefits. On the contrary, the Court has not formed any opinions in that regard and leaves those issues to be determined by the Commissioner after further proceedings.

## **Conclusion**

The Commissioner's final decision denying plaintiff's application for social security disability benefits is REVERSED and REMANDED to the Commissioner

for rehearing and reconsideration of the evidence, pursuant to sentence four of 42 U.S.C. §405(g).

The Clerk of Court is directed to enter judgment in favor of plaintiff.

**IT IS SO ORDERED**.

**DATED:   November 21, 2018.**

<u>**s/ Clifford J. Proud**</u>
**CLIFFORD J. PROUD**
**U.S. MAGISTRATE JUDGE**